Ms. Ernest, Mr. Bernie, Mr. Bernie Eberle. Good morning. Good morning, Your Honor. Good morning, Your Honor. My name is Robin Ernest and I represent appellant Wayne Holroyd in this appeal. Congress did not... Can you get closer to those microphones? You have a very soft voice. Okay. Thank you so much. Congress did not write for, it wrote and, into the plain text of the Safety Vow Statute as amended by a bipartisan First Act. Consequently, this court should decline appellee's request to read an unwritten board into the statute now for three reasons. First, the plain text. Second, it's structured as a conjunctive negative proof. And three, it's compliant with the Senate Legislative Drafting Manual. All support one plausible reading and that is that it is conjunctive. Or, as the Ninth Circuit stated in Lopez, that and means and. And then how do you address Judge Colleton's, what I think, impeccable decision in the Eighth Circuit in Pulsivar? I mean, I think that is exactly right insofar as the reading on the other side. And to be very honest with you, from my perspective, it's a compelling reading of the statute. And I think this argument over and is completely misguided. There are three requirements that have to all be met. And I think that's exactly what the words say. And I was shocked that anyone thought otherwise. And I don't mean to suggest I know it all. I was just shocked that there was another reading. And so, you know, I put that on the table. You can answer it as you see fit. My view right now, having prepared very carefully for this case, is Judge Colleton's position is correct. Why do you think it's wrong? Your Honor, respectfully, the Eighth Circuit found in Pulsivar that it adopted a descriptive reading only after finding that there was surplusage. Only after finding that when you would have subsections B and C met, that you would automatically have subsection A met also. Pointing to the opinions by Judge Wood in the Seventh Circuit and by the majority opinion in Lopez, they provide two compatible reasons why we feel that that is not true. That there is no surplus. First, linguistically, the language in subsection A is different from that in B and C. Subsection A counts criminal history points, which the guidelines identify as being prior crimes, prior sentences, which are not older than 15 years for three-point offenses and 10 years for two-point offenses. In that regard, they are distinct under the guidelines from B and C, which only address prior offenses. And since each of the criteria in A, B, and C are qualified by the clause as determined under the guidelines, they must be read with the guidelines. The guidelines chapter four, specifically 4A1.1, is controlling undetermining criminal history points. The commentary in 4A1.1 is clear that point one and point two must be read together. Ms. Ernst, isn't it take you to be referring to the distinction that Judge Wood, in her opinion in dissent in the Seventh Circuit, makes this argument? It seems to rest on kind of a function of prior offenses or a description of prior offenses that's unrooted to their role, which is in understanding history. So it seems to create an understanding of a prior offense that is novel. Is that wrong? The term prior offense is not identified in chapter four of the guidelines, 4A1.1. The 4A1.1 only talks about counting prior sentences. And so that's why it has to be read in conjunction with point two. The linguistic distinction is very important because it's consistent with what courts currently do and probation officers currently do in counting criminal history points, not prior offenses, in determining a defendant's guideline range. And therefore, the linguistic distinction in A, since it only counts prior sentences less than 15 years, is different than what's in B and C. And so we feel that A, by its structure, addresses more recent criminal sentences. And B and C still allow the court to consider older criminal sentences in a sense of considering whether or not there has been recidivism in relation specifically to B. And C also allows the court to consider misdemeanors that they feel are compelling in relation to the fact that they might evidence some factor of violence. And of course, violent offenses, as used in the guidelines, include both violence against persons and property. So it would include vandalism, for example. Under the government's interpretation, you would not want someone to be excluded from relief from mandatory minimums who simply had a misdemeanor offense for vandalism. That would be under C. So that makes the cumulative reading, which was advanced by the court in Lopez for the Ninth Circuit and also adopted by Judge Wood in her dissent in the Seventh Circuit, the more reasonable, the more plausible one. Also, it's consistent with the canons of statutory interpretation, which require us to read and as and. And so reading and as conjunctive as someone who would be reading this plain text for the first time would, then they would feel, as Holwood felt, that he had to qualify for all three of the criteria listed in A, B, and C in order to disqualify for the safety valve consideration. Ms. Ernest, I take it your claim is limited to an ineffective assistance of counsel claim. There's some suggestion in your brief, but then when the government calls it out, you don't take it up in the reply brief. There's some suggestion that you were making a direct argument that the appeal waiver did not cover the First Step Act because the First Step Act was enacted after. I take it you were not making that argument. That's correct, Your Honor. Our argument rests upon the allowance in the appeal waiver to bring an ineffective assistance of counsel claim, and that's what's being done here. But it rests upon the merits. There needs to be a determination as to whether or not the reading, the conjunctive reading, was the one that counsel should have put forth at the time of sentencing. So you believe we do need to reach the merits and decide that issue? We can't just say that's colorable and remand to the district court who, for example, might say whatever reading, I would impose the same sentence anyway. You're not asking us to simply remand without deciding the merits of the statutory question. We believe that the whole words of the appeal raises a textual question, as was done before this court in Winstead. And then as this court did in Winstead, that you would need to reach the merits of that textual claim in order to determine whether or not there was ineffective assistance. In other words, in order to determine whether or not this was a reading that was so plain that in sentencing, the defense counsel should have submitted it on his client's behalf. And we rely upon Winstead and also on Cawthorn for the argument that a beneficial sentencing argument should be put forth at the sentencing proceeding because of the finality of those proceedings. And in that sense, it is different from U.S. v. Glover, which the government relies upon. But if I can get back to clarifying surplusage, and again, the East Circuit's decision, they only reached the distributive reading once they found that there was one conjunctive reading and also that that conjunctive reading yielded impermissible surplusage. Of course, the canon of surplusage is simply a statutory canon. It should not override the weight of the plain text, which we believe is conjunctive as the Ninth Circuit found in Lopez. I see that my time is up. If there are other questions, otherwise, I will reserve the rest of my time for rebuttal. Thank you. Mr. Birney? Thank you, Your Honors. May it please the Court, I'm a member of the United States. Can I ask you first, the way I read 3553 F1 is someone with two point nonviolent offenses or less qualifies. Other than that, no. You don't count one point. That's right. You don't count one point. So if somebody only had one point conviction, they're to be held. And two point nonviolent would still be within the not more than four. Correct. And you would not have the three point. Correct. Can you think of another combination? Well, obviously, a one and a two, a two point nonviolence would also count. But yes, I think those are the only permutations I can think of at the moment. But I think that's actually a good point, Your Honor, because obviously a lot of this discussion is revolving around absurdity and how to read the statute in context. So, for example, let's say that we had a defendant with two drug distribution convictions for which they served one year in prison on each conviction. That's pretty serious. That would be, in almost all cases, two felony drug distribution convictions. They are still eligible for the safety valid under our reading. And that is the modest expansion of the safety valid that Senator Leahy and Senator Grassley were indicating in the legislative history when Congress passed it. Well, really, we don't know. I mean, they talk about modest, but they also say this is, you know, on the way to correcting the problem with over incarceration based on nonviolent drug offenses. And so the text is really what we have to contend with. And I have to say, when I read this, I thought, and this, this and this. If you have these three things, that's what disqualifies you. I mean, that's the way we use the language and that's the way the Senate drafting manual uses language. So one has to conclude that this was, they meant something else. And that we're willing as a court to redraft the statute to fix it. Well, I think there are two possible readings of the statute. I think there is the statute, the reading that your Honor posits, in which it is used as conjunctive cumulative. And that's how low it is. But I think there is also the reading that we advocate for here, and that Pulsiver also adopts, and that the concurrence in Case adopts. And honestly, the majority in Case adopts a very similar reading. It uses the word disjunctive, but it comes out in the same way. So basically Case and Pulsiver are both using the and in a conjunctive distributed sense. Which is another way that you can read the statute. And I think part of the complexity here is the fact that the prefatory phrase, not, that is in the prefatory phrase. And Scalia points out in his book that with negatives there are nuances. This is the type of nuance I think that we're talking about. One person could read it the way your Honor is positive, but another person could very easily read it the way that we're positive. In fact, we think our reading is better. If you have these two competing readings, then you have to decide, okay, what did Congress mean? And that is where you have to go to context. We obviously make a number of arguments along those lines. Not just the absurd results argument, which I can elaborate on, but also the poofless argument. So appellant's reading of offense versus points in BMC is quite strange, we would submit. I mean, Pulsiver noted that the word offense in BMC is really just a common sense shortening. How else was Congress supposed to refer to a prior conviction as an offense? The important word in BMC is point. Congress is saying three-point offense, two-point offense. And that is really what should be looked at. So these past convictions which are not scored, which have no points, are not really relevant. That's not a reason to say that the candidate against superfluidity doesn't apply here. One other thing that I just want to note before getting more into the merits of the issue, which of course I can respond to questions to, is that this is an ineffective assistance of counsel issue. It is not the merits, which is what Pulsiver and Lopez and Case all had to deal with. Here, this court, frankly, I think has, I don't want to call it an easier burden, but a different inquiry to make. It is just whether counsel was so deficient, so constitutionally deficient, for not making this argument. Which we have, I think the briefing has already established, is not an obvious argument to make. And I would note, too, that at the time of Holroyd's sentencing, as far as we can tell, the argument had never been made in any court throughout the country. Even in Lopez, the district court had not yet received a sentencing memorandum from the defendant that made this argument. So just putting yourself in Mr. Zucker's, the defense counsel's, shoes, at the time of this sentencing, the argument has never been made, apparently. It certainly has never been decided. He is looking at his client, who at this time, the PSR is indicating, is a career offender, which is dramatically increasing his exposure. And so Mr. Zucker is focused at sentencing on that, and he writes a very persuasive sentencing memorandum for why he is not a career offender, which the district court agreed with. What's the strategy in that situation of not also making a plain textual argument? I don't understand how that even could be a strategic decision. If you have a strong argument on career offender, this doesn't detract from that. It doesn't express any failure to take responsibility. It just says, here's a new statute that is intended to give the district judges more discretion. It doesn't require anything of them. It gives them discretion if they think it's appropriate. Why wouldn't counsel make that argument? I don't understand the strategic characterization. Well, I think there are two potential responses. First, just more directly on the strategic point that Your Honor is making, Mr. Zucker could have reasonably thought the career offender provision is really driving the inquiry here, and that's what I need to spend most of my time on. That's what I need to convince the court. And he is looking at, instead, an issue here, the safety valve, which nobody has ever brought up. And so why not, instead of, you know, raising all of these issues for the district court and getting bogged down in that, instead just focus on the career offender approach, it dramatically reduces exposure. But then the second thing I would say is that could he have made the argument? Of course, theoretically, any defense counsel could make any number of arguments, right? But the record indicates that he did not agree with the argument. He said on the record he did not think Mr. Holwood was correct. And by the way, we agree with that. We don't think Mr. Holwood was correct. But that was a perfectly reasonable position for Mr. Zucker to take. And he does not have to make all the arguments that Mr. Holwood wants him to make, of course. When you look at the record as a whole, Mr. Zucker did a pretty good job for his client. He brought down his exposure tremendously. At one point, Mr. Holwood was talking about withdrawing his plea. The district court noted that if he had been convicted of one of the substantive drug offenses, he would have been a career offender if that had happened at trial. So Mr. Zucker is coming in here, and actually we would submit doing a pretty good job, far from being ineffective. And at least a couple of circuits, it turns out, agree with him. I'm sorry? At least a couple of circuits agreed with him. That's correct. I mean, eventually. That's right. Do you have 3553 in front of you? I do. Okay. First of all, I think the defendant agrees that all five have to be met, subdivisions, one through five of 35. So that's one definition. I mean, one usage of and. In other words, one, two, three, and four. One, two, three, four, and five all have to be met. Okay. Nobody talks about four. And I'd like you to tell me what your reading is of the and in four. In other words, to be eligible, you cannot be an organizer, leader, so on and so forth, and not engage in a CCE. How do you read that and? Well, here I would read the and. I think everyone reads this and to say that, yes, he has to meet all five of these criteria to be CCE eligible. But we would actually argue that the and in F1 that we've been talking about this whole time is consistent with that reading because we're arguing he has to meet all three of the criteria under F1. Well, I'm asking about subsection four. Right. So if you have been a leader and an organizer, but not in a CCE, do you qualify? Let me just look at this very quickly, Your Honor, because I haven't considered this until now. Oh, I see. You're talking about the internal and I understand. I think you would have to meet. Both of these requirements, you would have to show that you were not an organizer, etc. And you would and it would have to be shown that the defendant was not engaged in a continuing criminal enterprise. That's my reading of it offhand. I have not looked at this issue yet, Your Honor. Yes, I think both of those would have to be met. That's my first. I think the CCE is surplusage because my clerk and I looked at this and according to the CCE crime itself, you have to be a leader or a supervisor or a manager to be guilty of CCE. So that second requirement of not being engaged in a continuing criminal enterprise may be surplusage. But I just wondered if you looked at it. I did not. I could not, Your Honor, one way or another, unfortunately. Okay. Because to make F1, I'm not going to pull this off. It seems like to read F1 the way you are urging us to read it, C would have to begin does not have as the clause following and says was not engaged. So if it says the defendant does not have A, more than four, B, a prior three, and does not have prior two, that would make the negative distributed. But we don't have that distribution. And so you're injecting text. And I guess my question is I understand the reading. I've read the cases. They do a very good job of it. Where are you on the rule of lenity? You really think it's so clear that there's no ambiguity to read this in favor of the defendant, make him eligible for something, give the district court the opportunity to consider it in light of that authority that he can or can decide against exercising? Well, on the rule of lenity point, the standard there, as I've seen it in the case law and the other cases, has been a greedous ambiguity. There's a greedous ambiguity. We would submit there is not a greedous ambiguity here because of all of the factors we pointed to. Support for us, serve as all legislative history, structure of the statute, et cetera. I think it's also rejects the rule of lenity argument. It's either a pulse or a case. Pulse for both. Pulse for both, yes. And so we use a greedous ambiguity standard, I believe. And so we would submit that that is the right way to approach that. All right. If there are no more questions, thank you. All right. Thank you, Your Honors. Ms. Cenezares, why don't you take two minutes? I wanted to get back to the surplus argument as it was addressed in Lopez. You want to take that? Yeah, thanks. In Lopez, the court addresses that by showing that when you have B and C met, you don't necessarily have A met. And that's because you can have a three-point violent offense that satisfies both B and C, but is under the number of criminal history points that are required under A. And I will use an example to answer Judge Henderson's questions about instances when a defendant would not be eligible. He would not be eligible when the defendant had a three-point recent violent offense and another three-point nonviolent offense because he would have six criminal history points. He would have, under A, he would have a three-point violent offense under B, and that would simultaneously satisfy as a at least two-point violent offense under C. Another example is a defendant who has a three-point nonviolent offense and a two-point violent offense. Then he would satisfy subsection A by having four or five criminal history points. He would satisfy B by having a three-point prior nonviolent offense, and he would satisfy C by having a two-point prior violent offense. All this is to illustrate that the safety valve, as employing the conjunctive interpretation that appellants are requesting here, does not have the absurd results that the government is arguing. It does not effectuate release or to allow safety valve eligibility for serious violent offenders. And what safety valve eligibility does is only allow the court's discretion to sentence within the guidelines as usual. I see my time has expired. All right, Ms. Earnest, you were appointed by our court to represent Mr. Holroyd, and you've done an outstanding job, and we thank you. Thank you, Your Honors. Thank you.
judges: Henderson, Pillard, Edwards